# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Citadel Watford City Disposal Partners, L.P., *et al.*,[1] | ) Case No. 15-11323 (KJC) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF
## PLAN OF LIQUIDATION

> GELLERT SCALI BUSENKELL & BROWN, LLC
> Michael Busenkell (DE 3933)
> 1201 N. Orange St., 3rd Floor
> Wilmington, DE 19801
> Telephone:  (302) 425-5800
> Facsimile:   (302) 425-5814
> Email: mbusenkell@gsbblaw.com
>              bkeilson@gsbblaw.com
>
> *Counsel for the Debtors and Debtors-in-Possession*

Dated: January 31, 2017
          Wilmington, Delaware

---

[1]  The Debtors and the last four digits of their respective tax identification numbers are: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266);  Citadel Watford City Disposal Partners, LP (1520). The mailing address for each Debtor is, c/o Gavin/Solmonese LLC, 919 N. Market St., Ste. 600, Wilmington, DE  19801.

**MEMORANDUM IN SUPPORT OF CONFIRMATION**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PLAN OF LIQUIDATION**

**I.    Preliminary Statement**

This memorandum of law (the "Memorandum")[2] is submitted by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in support of confirmation of the Plan of Reorganization of the Debtors Dated August 11, 2016 [Docket No. 379] (including all exhibits thereto and as amended, modified or supplemented in the Notice filed at Docket No. 484 and from time to time, the "Plan"). The Debtors and the Committee are the proponents of the Plan. The Debtors and the Committee support confirmation and implementation of the Plan as currently proposed. There are no objections to the Plan. Further, the Plan has been accepted by every Holder of Claims entitled to vote that cast a Ballot. Accordingly, the Debtors respectfully request that the Plan be confirmed.

**II.   General Background of the Chapter 11 Cases**

The Court is respectfully referred to the Disclosure Statement, the *Declaration of Edward T. Gavin in Support of Confirmation of* the Plan of Reorganization of the Debtors Dated August 11, 2016 and the entire record of the Cases for an overview of the Debtors, their pre-Petition Date debt structure and all other relevant facts.

**III.  Solicitation**

On November 11, 2016, the Debtors filed the Motion Of Debtors For Entry Of An Order (I) Conditionally Approving The Disclosure Statement; (II) Scheduling A Plan Confirmation Hearing; (III) Approving Solicitation Packages And Procedures; (IV) Approving The Form Of Ballot; And (V) Granting Related Relief [D.I. 443] (the "Solicitation Procedures Motion").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

On December 16, 2016, the Court entered an order (the "Solicitation Procedures Order") granting the Solicitation Procedures Motion. (D.I. 475) The Solicitation Procedures Order also scheduled a Combined Confirmation Hearing, and established the form, manner and time by which the Debtors were required to serve notice of the Combined Confirmation Hearing. In addition, the Solicitation Procedures Order authorized the Debtors to solicit acceptances or rejections of the Plan, approved the form of ballots and voting instructions (the "Ballots") to be transmitted with the Plan and Disclosure Statement for voting purposes, and established January 27, 2017, at 4:00 p.m., prevailing Eastern time as the deadline for delivery of Ballots accepting or rejecting the Plan (the "Voting Deadline") and for the filing and delivery of objections to the Disclosure Statement and/or Confirmation of the Plan (the "Objection Deadline").

In compliance with the Solicitation Procedures Order and as evidenced by the Gavin Declaration, on or before December 16, 2016, actual notice of the Combined Confirmation Hearing, Voting Deadline and Objection Deadline was duly provided. The Debtors solicited votes on the Plan by transmitting copies of the Plan, the Disclosure Statement, notice of the Combined Confirmation Hearing (the "Confirmation Hearing Notice"), an appropriate ballot and a cover letter (collectively, the "Solicitation Materials") to Holders of Claims entitled to vote on the Plan. The Confirmation Hearing Notice was transmitted to all creditors who filed a claim, all creditors that appear on the Debtors' schedules of assets and liabilities filed pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 and all equity interest holders of record.

**IV.    Ballot Tabulation**

In connection with the tabulation of votes, the Certification Of Gavin/Solmonese LLC Regarding Tabulation Of Votes In Connection With The Amended Chapter 11 Plan Of

Liquidation Proposed By The Debtors (the "Voting Declaration") was filed with the Court contemporaneously herewith.

As set forth in the Voting Declaration, as of the Voting Deadline eleven (11) holders of Claims in Class III aggregating $279,042.73 in claims (constituting 98.24% in amount and 78.57% in number of Class III Claims that voted), voted to accept the Plan.

**V.     The Plan**

The Plan represents the culmination of months of extensive effort and coordination by the Committee, the Debtors and their professional advisors. Under the Plan, Holders of impaired Claims will obtain a recovery that is equal to or greater than they would obtain if the Cases were converted to cases under chapter 7 of the Bankruptcy Code.

Articles IV, VI and VIII of the Plan specifies the treatment of all Classes of Claims and Interests under the Plan, and specifies which Classes are unimpaired or impaired. The Plan places similarly situated Claims and Interests in the same Class and provides for the same treatment for each Claim or Interest in a particular Class. The Plan is also dated and identifies the Debtors and the Committee as the plan proponents.

Articles IX, X and XI and other provisions of the Plan provide adequate means for its implementation. Among other things, they provide for: (a) the creation of a liquidating trust (the "Citadel Liquidating Trust"); (b) a mechanism and procedure for funding the Citadel Liquidating Trust and making distributions therefrom; (c) mechanics for the vesting of Assets in the Citadel Liquidating Trust; (d) a mechanism and procedure for post-confirmation dissolution of the Debtors; (e) liquidation of any remaining assets of the Estates; (f) the cancellation of securities; (g) the treatment of executory contracts and unexpired leases; and (h) the post-

confirmation retention of jurisdiction by the Court as necessary in connection with the implementation and consummation of the Plan.

Under the Plan, Claims in Classes I and II are unimpaired, and Claims and Interests in Classes III and IV are impaired. The treatment accorded to the impaired Classes of Claims and Interests under the Plan represents the best treatment that can be provided to such Classes pursuant to the priority provisions of the Bankruptcy Code.

## VI.    The Plan should be confirmed as it meets the requirements for section 1129

Section 1129(a) of the Bankruptcy Code provides that the Court shall confirm a chapter 11 plan if all of the requirements of sections 1129(a)(1) through (a)(13) of the Bankruptcy Code are satisfied. 11 U.S.C. § 1129(a). The Plan complies fully with these requirements. First, there are no objections to compliance with sections 1122(a), 1123, 1129(a)(4), (7), (8), (9), (11), and (12) and 1129(b) of the Bankruptcy Code, and, as set forth below, in any event, the Plan complies with these sections of the Bankruptcy Code. Second, sections 1129(a)(5), 1129(a)(6) and 1129(a)(13) of the Bankruptcy Code are inapplicable. Third, while section 1129(a)(8) is not satisfied (because Holders of Class IV (Equity Interests) are both impaired and deemed to have rejected the Plan), the Plan satisfies section 1129(b). Accordingly, the Plan should be confirmed.

### A.    The Plan complies with the applicable provisions of the Bankruptcy Code (section 1129(a)(1))

Bankruptcy Code section 1129(a)(1) requires that a plan comply with the "applicable provisions" of the Bankruptcy Code. In determining whether the Plan complies with section 1129(a)(1), the Court must consider the following sections of the Bankruptcy Code: section 1123(a), which sets forth certain elements that a plan must contain; section 1122, which governs the classification of claims; and section 510, which governs the subordination of claims.

H.R. Rep. No. 95-595, at 412 (1977) reprinted in 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 126 (1978); In re PWS Holding Corp., 228 F.3d 224,243 (3d. Cir. 2000) (holding that the court shall confirm a plan if it complies with the applicable provisions of the Bankruptcy Code).

    1.    *The Plan satisfies the requirements of section 1122*

Section 1122 of the Bankruptcy Code is satisfied when a "reasonable basis" exists for a classification structure, and the claims or interests within each particular class are substantially similar. See In re Armstrong World Indus., Inc., 348 B.R. 136, 159 (Bankr. D. Del. 2006). Moreover, plan proponents have significant flexibility in classifying claims under section 1122 of the Bankruptcy Code. Courts are also afforded broad discretion in approving the classification scheme and should consider the specific facts of each case when making such a determination. In re Jersey City Med. Ctr., 817 F.2d 1055, 1060-61 (3d Cir. 1987) (stating that "Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case"); In re Dow Corning, 280 F.3d 648, 661 (6th Cir. 2002) (noting "broad discretion" courts are given to determine proper classifications).

A reasonable basis for the Plan's classification scheme exists because there are business and legal justifications for classifying the Classes separately. The Plan segregates the various Claims against, and Interests in, the Debtors into Administrative Expense Claims, Priority Tax Claims, Class I Claims consisting of Secured Claims, Class II Claims consisting of Priority Non-Tax Claims, Class III Claims consisting of General Unsecured Claims, and Class IV Interests consisting of Interests in the Debtors. Moreover, the Claims in each Class are substantially similar to all other Claims in the respective Classes and no interested party has challenged the classification scheme. Accordingly, the classification structure set forth in the Plan is proper, thereby satisfying the requirements of Section 1122 of the Bankruptcy Code.

2.  *The Plan satisfies the requirements of section 1123(a)*

Section 1123(a) of the Bankruptcy Code sets forth seven mandatory requirements with which every Chapter 11 plan must comply. 11 U.S.C. §§ 1123(a)(1)-(7).

a.  *Section 1123(a)(1)*

Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims (with the exception of certain administrative and priority claims) and all interests, and that such classification comply with section 1122 of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1). With the exception of Administrative Expense Claims and Priority Tax Claims, which are not required to be classified, Article VII of the Plan designates four (4) classes of Claims and Interests. See Plan, Article VII. These classes, which include all Claims against and Interests in the Debtors that are required to be classified, are as follows:

| **Class** | **Designation** |
|---|---|
| **Class I** | Secured Claims |
| **Class II** | Priority Non-Tax Claims |
| **Class III** | General Unsecured Claims |
| **Class IV** | Equity Interests |

Further, as set forth above, the classifications comply with Section 1122. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(1)

b.  *Section 1123(a)(2)*

Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). Articles VII and VIII of the Plan summarize all classes of Claims and Interests and state whether they are "impaired" or "unimpaired." See Plan, Article VII, VIII. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(2).

      c.      *Section 1123(a)(3)*

Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). Articles VII and VIII of the Plan specifies the treatment of Claims and Interests that are impaired. See Plan, Articles VII and VIII. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

      d.      *Section 1123(a)(4)*

Bankruptcy Code section 1123(a)(4) requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). Under the Plan, each Holder of a Claim or Interest within a particular class is receiving treatment identical to other Holders of Claims and Interests in such Class, unless any such Holder has agreed to accept a less favorable treatment. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

      e.      *Section 1123(a)(5)*

Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation. 11 U.S.C. § 1123(a)(5). As explained, infra, Article XI of the Plan, entitled "Implementation And Effect Of Confirmation Of Combined Disclosure Statement And Plan," and provisions located within other Articles of the Plan provide adequate means to facilitate implementation of the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

f. *Section 1123(a)(6)*

Section 1123(a)(6) of the Bankruptcy Code requires certain modifications to a debtor corporation's charter concerning equity securities. Because the Plan provides for the liquidation of the Debtors and the cancellation of all Interests in the Debtors, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

g. *Section 1123(a)(7)*

Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any officer, director or trustee, or any successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1123(a)(7).

The Committee has selected Gavin/Solmonese ("G/S") to serve as the trustee of the Citadel Liquidating Trust. Ted Gavin of G/S is the Debtors' Chief Restructuring Officer and G/S has been involved in the Cases. G/S's appointment as the Citadel Liquidating Trustee is consistent with the interests of creditors, equity holders, and public policy. Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

**B.    The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code (section 1129(a)(2))**

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of title 11. 11 U.S.C. § 1129(a)(2). The principal purpose of Bankruptcy Code section 1129(a)(2) is to ensure that a plan proponent has complied with the requirements of section 1125 in the solicitation of acceptances of the plan. In re Resorts Int'l Inc., 145 B.R. 412, 468-69 (Bankr. D.N.J. 1990); see also H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368.

Here, the plan proponents have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 and the applicable Bankruptcy Rules, including Rules 3016, 3017 and 3018. On December 16, 2016, the Court entered the Solicitation Procedures Order. The Solicitation Materials were distributed to all parties in accordance with the Solicitation Procedures Order. The Debtors submit that they have complied with all other orders of the Court entered during the pendency of the Cases and with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules with respect to post-petition disclosure and solicitation of acceptances of the Plan. Accordingly, the Debtors believe they have fully complied with all of the applicable provisions of the Bankruptcy Code.

### C.     The Plan has been proposed in good faith (section 1129(a)(3))

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although not defined in the Bankruptcy Code, "good faith" has been interpreted by the courts to include (i) the Debtors' "legitimate and honest purpose" in proposing the plan and "reasonable hope of success," In re Century Glove, Inc., No. Civ. A. 90-400-SLR, 1993 U.S. Dist. LEXIS 2286, at *15 (D. Del. Feb. 10, 1993), (ii) a showing that the plan was proposed with "honesty and good intentions," Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988) (citations omitted), and (iii) the existence of "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re Madison Hotel Assoc., 749 F.2d 410, 425 (7th Cir. 1984) (citations omitted). The Court must also consider the totality of the circumstances surrounding a plan to determine if it has been proposed in good faith. See In re New Valley Corp., 168 B.R. 73, 81 (Bankr. D.N.J. 1994) (citations omitted).

The Plan has been proposed with the honest intent to administer the Debtors' Estates, is the result of arms length negotiations and is not proposed by any means forbidden by

9

law.  The Plan seeks to maximize recoveries for all Holders of Claims and Interests.  The Plan represents the culmination of months of extensive effort and coordination by the Committee, the Debtors and their professional advisors.  Under the Plan, Holders of impaired Claims will obtain a recovery that is equal to or greater than they would obtain if the Cases were converted to cases under chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirement of section 1129(a)(3) of the Bankruptcy Code.

        **D.**       **The Plan satisfies the requirements of section 1129(a)(4)**

All agreements by the Committee and the Debtors to retain professional persons to provide services to the Committee and the Debtors, respectively, in connection with, the Cases have been disclosed to the Court in applications to employ those professionals filed with the Court.  Pursuant to the Plan, the Court will retain jurisdiction to hear and determine all applications for final allowance of compensation and reimbursement of costs and expenses authorized to be paid or reimbursed under the Bankruptcy Code in respect of services provided or costs and expenses incurred during the period from the Petition Date to the Confirmation Date.  Accordingly, the Plan satisfies the requirement of section 1129(a)(4) of the Bankruptcy Code.

        **E.**       **The Plan satisfies the "best interests" test (section 1129(a)(7))**

Section 1129(a)(7) of the Bankruptcy Code, the so-called "best interests" test, requires that any holder of a claim or interest that is impaired by the plan and that has not accepted the plan:

> receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A)(ii).

The best interests test focuses on individual dissenting creditors rather than classes of claims. See In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 150 (Bankr. S.D.N.Y. 1984). Under the best interests test, the Court must find that each dissenting creditor or interest holder will receive or retain value that is not less than the amount such holder would receive if the debtor was liquidated. See In re Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1998) (presentation of liquidation analysis showing lesser probable recovery in chapter 7 satisfies section 1129(a)(7)); In re Drexel Burnham Lambert Group, Inc., 138 B.R. at 723; In re Victory Constr. Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984). In essence, the best interests test contemplates a comparison of distributions under a proposed plan with those that would be realized in a hypothetical chapter 7 liquidation. See In re Jartran, Inc., 44 B.R. 331, 390 (Bankr. N.D. Ill. 1984).

Article III, section F of the Plan contains the Debtors' best interests analysis. That analysis evidences that under the Plan, Holders of (i) Claims would receive or retain value that is substantially more than and (ii) Interests would receive or retain value that is not less than they would receive or retain if the Debtors were liquidated under chapter 7. Accordingly, the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

F.    **Acceptance by impaired Classes (section 1129(a)(8))**

Every Class of Claims entitled to vote on the Plan has voted to accept the Plan or has been deemed to accept the Plan in accordance with Article V of the Plan and paragraph 8 of the Solicitation Procedures Order. However, holders of Interests in Class IV are deemed not to have accepted the Plan. While section 1129(a)(8) may not have been satisfied, the Plan should be confirmed under section 1129(b) of the Bankruptcy Code. See VI(L), infra.

G.    **The Plan satisfies the requirements of section 1129(a)(9)**

The Plan provides for the payment in full of all Allowed Administrative Expense Claims and Allowed Priority Tax Claims. Accordingly, the Plan satisfies the requirement of section 1129(a)(9) of the Bankruptcy Code.

### H.   The Plan satisfies the requirements of section 1129(a)(10)

If a plan has one or more impaired classes of claims, Bankruptcy Code section 1129(a)(10) requires that at least one such class vote to accept the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10). Class III is an impaired Class of Claims entitled to vote under the Plan, and such Class has voted to accept the Plan without the need to include any acceptance of the Plan by any insider. Accordingly, the Plan satisfies the requirement of section 1129(a)(10) of the Bankruptcy Code.

### I.   The Plan satisfies the requirements of section 1129(a)(11)

Section 1129(a)(11) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This requirement, commonly known as the "feasibility" standard, usually encompasses two interrelated determinations: (i) the Debtors' ability to consummate the provisions of the plan and (ii) the Debtors' ability to reorganize as a viable entity. In re Lakeside Global II, Ltd., 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989 (stating that the definition of feasibility "has been slightly broadened and contemplates whether [a] Debtors can realistically carry out its Plan . . . and [b] whether the Plan offers a reasonable prospect of success and is workable").

The Plan expressly provides for the liquidation of the Debtors' Estates. In addition, the Plan provides for the establishment of appropriate reserves to pay administrative

and priority claims and a reserve to ensure distributions to Holders of General Unsecured Claims entitled to receive distributions under the Plan and for an adequate means for implementing the Plan. The Debtors submit that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code. See In re Revco, 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that "[s]ection 1129(a)(11) is satisfied as the plan provides that the property of the Debtors shall be liquidated").

### J.     The Plan satisfies the requirements of section 1129(a)(12)

Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under 28 U.S.C. § 1930 be paid or that the plan provide for their payment on the effective date of the plan. 11 U.S.C. § 1129(a)(12). The Plan requires payment of, and provisions for all unpaid fees of the type specified in 28 U.S.C. § 1930. Accordingly, the Plan satisfies the requirement of section 1129(a)(12) of the Bankruptcy Code.

### K.     The Plan satisfies the requirements of section 1129(a)(13)

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code for the duration of the period that the Debtors have obligated themselves to provide such benefits. 11 U.S.C. § 1129(a)(13).

The Debtors have no obligations to provide any retiree benefits. Accordingly, the Plan satisfies the requirement of section 1129(a)(13) of the Bankruptcy Code.

### L.     The Plan satisfies the requirements of section 1129(b)

Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation of a plan when the plan is not accepted by all impaired classes of claims or interests. Under the Plan, Interests in Class IV are not entitled to receive or retain any property or interest in property under the Plan; accordingly, they are conclusively presumed to have rejected the Plan. Section

1129(b) permits the Court to cram down the Plan over such dissenting vote as long as the Plan does not "discriminate unfairly" and is "fair and equitable."

The Debtors submit that the requirements of section 1129(b) are satisfied and the Plan should be confirmed as both requirements for "cramdown" of the Plan on Interests in Class IV are satisfied as: (i) the Plan does not discriminate unfairly, and (ii) it is fair and equitable, with respect to Interests in Class IV.

The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar claims are treated differently without a reasonable basis for the disparate treatment. In re Exide Techs., 303 B.R. 48, 78 (Bankr. D. Del. 2003); In re Kennedy, 158 B.R. 589, 599 (Bankr. D.N.J. 1993); In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990). Class IV is the only class of Interests under the Plan, and, thus, a reasonable basis exists for separately classifying Class IV Interests from the other Classes of Claims under the Plan. Separately classifying Interests and Claims accurately reflects the different contractual and legal rights of these various holders against the Debtors both inside and outside of the bankruptcy context.

In addition, the Plan is "fair and equitable" within the meaning of section 1129(b) of the Bankruptcy Code. Section 1129(b)(2)(C) provides that a plan is "fair and equitable" with respect to a class of interests if either: (i) the holder of the interest receives are retains the greater of the allowed amount of any liquidation preference, redemption price or the value of the interest or (ii) no holder of a junior interest receives or retains any property on account of its interest. First, the Interests in Class IV have no value as they would not be entitled to retain or receive any value in a proceeding under Chapter 7 of the Bankruptcy Code. Further, no Holder of an interest that is junior to the holder of a Class IV Interest will receive any property on account of its

14

interest under the Plan. Accordingly, the Plan satisfies the requirement of section 1129(b) of the Bankruptcy Code.

## VII. The permissive provisions contained in the Plan are appropriate

Section 1123(b) of the Bankruptcy Code specifies certain permissive provisions that can be included in a chapter 11 plan. The permissive provisions of the Plan, including the release and substantive consolidation provisions, are consistent with the Bankruptcy Code based on the facts of these Cases.

### A. The releases provisions are appropriate

The release provisions contained in Article XII of the Plan are integral thereto. The releases reflected in Article XII of the Plan, effect releases of (a) the Chief Restructuring Officer; (b) the Committee; (c) each member of the Committee; (d) the Independent Manager; and each of their current and former members, managers, subsidiaries, affiliates, directors, officers, employees, agents, designees, attorneys, financial advisors, investment bankers, accountants, and other professionals or representatives. The exculpation provision contained in Article XII of the Plan is customary and appropriate and properly limited to parties entitled to exculpation in accordance with the provisions of the Bankruptcy Code and Third Circuit law.

Courts apply the factors identified in the Master Mortgage case in connection with debtor releases. See Master Mortgage Inv. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994).[3] The court in Master Mortgage approved releases and indicated that the following five factors were important to its decision:

---

[3] Such cases include: In re Zenith Elecs. Corp., 241 B.R. 92 (Bankr. D. Del. 1999) (approving releases over objection of equity committee); In re Int'l Wireless Commcn's Holdings, Inc., No. 98-2007, 1999 Bankr. LEXIS 1853 (Bankr. D. Del. March 26, 1999) (approving releases for pre-petition lender over objection of minority shareholders); In re Genesis Health Ventures, Inc., 266 B.R. 591, 606-07 (Bankr. D. Del. 2001) (approving releases in favor of the pre-petition agent).

15

      i.      There is an identity of interest between the debtor and the third party such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;

      ii.     The non-debtor has contributed substantial assets to the reorganization;

      iii.    The injunction is essential to the reorganization (without it, there is little likelihood of success);

      iv.    A substantial majority of the creditors have agreed to support the injunction. Specifically, the impacted class, or classes, "overwhelmingly" votes to accept the proposed plan treatment; and

      v.     The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

Master Mortgage, 168 B.R. at 935. While not all of these enumerated factors are necessary to uphold plan provisions containing third-party [debtor] releases, the Debtors submit that substantially all of these factors are present in the Cases.

    **B.**    **Exculpation provision is proper**

Article XII.A of the Plan is an exculpation provision benefiting the Debtors, the Committee, the members of the Committee and their respective officers, directors, employees and professionals, which expressly excludes any acts that constitute willful misconduct or gross negligence and is consistent with the exculpation clause approved in In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000). Accordingly, the exculpation provisions are appropriate and should be approved.

    **C.**    **Substantive consolidation is appropriate**

The Plan is predicated upon the substantive consolidation of all of the Debtors' Cases, solely for the purposes of the Plan, the distributions under the Plan, and all actions with respect to confirmation and consummation of the Plan. The Debtors believe that substantive consolidation in the Plan is fair, appropriate and necessary and should be approved.

Although the power to substantively consolidate bankruptcy estates is not explicitly authorized by any provision of the Bankruptcy Code, it is well established that bankruptcy courts may use their equitable powers under section 105 of the Bankruptcy Code to consolidate cases involving related debtors.  See, e.g., Eastgroup Props. v. S. Motel Assoc., 935 F.2d 245, 248 (11th Cir. 1991); In re Stone & Webster, Inc., 286 B.R. 532, 539 (Bankr. D. Del. 2002); In re Leslie Fay Cos., 207 B.R. 764, 779 (Bankr. S.D.N.Y. 1997); Bruce Energy Ctr. Ltd. v. Orfa Corp. of Am. (In re Orfa Corp. of Philadelphia), 129 B.R. 404, 413-14 (Bankr. E.D. Pa. 1991) ("the court's power to substantively consolidate cases is derived from its general equitable powers under 11 U.S.C. § 105").

The Third Circuit in In re Owens Corning held that, absent consent, the criteria utilized to permit substantive consolidation include pre-petition disregard of corporate separateness or post-petition scrambling of assets and liabilities.  See In re Owens Corning, 419 F.3d 195, 205 (3d Cir. 2005) ("Substantive consolidation . . . emanates from equity [and] 'treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities'") (quoting In re Genesis Health Ventures, Inc., 402 F.3d 416, 423 (3d Cir. 2005)).

Here, all three criteria are met.  First, no party-in-interest has objected to substantive consolidation, accordingly, the requisite "consent" has been achieved.

Second, the applicable facts demonstrate a substantial identity and an extensive and inseparable interrelationship and entanglement between and among the Debtors.  For example:  (a) the Debtors maintained one corporate office, located in Watford, North Dakota; (b) the Debtors had common officers, directors and corporate employees; (c) the Debtors issued their

financial statements on a consolidated basis - confirm; (d) the Debtors filed joint federal income tax returns; and (e) the Debtors maintained a consolidated cash management system.

Third, the assets available to make payment to creditors under the Plan are the result of (i) the sale of substantially all of the assets of the debtors, collectively, and (ii) litigation proceeds.  None of these funds are allocable to any particular Debtor.  The Debtors' sale of substantially all of their collective assets included a payment that was not allocated among the various Debtors.  Moreover, the expected litigation proceeds are in respect of various potential causes of action related to all of the Debtors.  As such, it would be virtually impossible to attribute portions of those contributions to the individual Debtors on any rational basis.

Further, any attempt to allocate the recoveries would likely be so time-consuming and expensive as to substantially delay and diminish the remaining funds, if any, for distributions to the Holders of Claims.  In order to effectuate a plan under which the Estates were not consolidated, the Debtors would be required (x) to attempt to formulate a reasonable methodology to allocate the amounts owed to creditors (including but not limited to administrative and priority creditors) to the various Debtors' Estates, and (y) to segregate each Debtor's books and records to account for intercompany transactions, including intercompany receivables and payables as a result of transfer of customer contracts and machinery and equipment among and between the various Debtor entities.  Such a process would entail expense and delay, as would any litigation challenging the methodology employed, which could potentially eliminate the possibility of any distributions made to the Holders of General Unsecured Claims.

Finally, section 1123(a)(5)(B) of the Bankruptcy Code expressly contemplates plan provisions that provide for a merger or consolidation of the debtor with one or more persons

as a means for the implementation of Chapter 11 plan.  Here, not only does the contemplated substantive consolidation implement the Plan, but, it also presents the means for the highest possible recovery for the General Unsecured Creditors.

Accordingly, the Committee respectfully submits that the substantive consolidation of the Cases is in the best interests of the Debtors, their Estates and their creditors.

**VIII.   Conclusion**

For all the foregoing reasons, and based on the authorities and evidence presented above, and as will be further demonstrated at the Confirmation Hearing, the Committee submits that the Plan satisfies all of the applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed.  Accordingly, the Committee respectfully requests that the Court enter the Confirmation Order confirming the Plan and all provisions thereof and grant such other relief as is just and proper.

Dated: January 31, 2017            GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Telephone:  (302) 425-5800
Facsimile:   (302) 425-5814
Email: mbusenkell@gsbblaw.com

*Counsel for the Debtors and Debtors-in-Possession*