**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Citadel Watford Disposal Partners, L.P., et al., | ) Case No. 15-11323 (KJC) |
| | ) |
| | ) (Jointly Administered) |
| Debtors | ) |
| | ) |
| | ) |
| Citadel Watford Disposal Partners, L.P., et al. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| J. Stanton Dodson; | ) Adv. Proc. No. 15-51367 (KJC) |
| Abos, LLC; | ) Adv. Proc. No. 16-51547 (KJC) |
| John Bannon; | ) Adv. Proc. No. 16-51548 (KJC) |
| Citadel H20, LLC; | ) Adv. Proc. No. 16-51549 (KJC) |
| Alenush Dodson; | ) Adv. Proc. No. 16-51550 (KJC) |
| Focus Capital Partners, LLC; | ) Adv. Proc. No. 16-51551 (KJC) |
| H2O Partners, L.P.; | ) Adv. Proc. No. 16-51552 (KJC) |
| Lund Oil, Inc.; | ) Adv. Proc. No. 16-51553 (KJC) |
| Odin Oil and Gas, LLC; | ) Adv. Proc. No. 16-51554 (KJC) |
| Mildred Powell; | ) Adv. Proc. No. 16-51555 (KJC) |
| R. James Consulting, Inc.; | ) Adv. Proc. No. 16-51556 (KJC) |
| Peter Simons; | ) Adv. Proc. No. 16-51557 (KJC) |
| Troy Gould P.C.; | ) Adv. Proc. No. 16-51558 (KJC) |
| Khan Pham; | ) Adv. Proc. No. 16-51559 (KJC) |
| State of North Dakota, Industrial Commission of North Dakota, Oil and Gas Division; | ) Adv. Proc. No. 17-50015 (KJC) |
| | ) |
| Defendants | ) |
| | ) |
| -and- | ) |
| | ) |
| Official Committee of Unsecured Creditors of Citadel Watford Disposal Partners,  L.P., et al., | ) Adv. Proc. No. 17-50024 (KJB) |
| Plaintiff, | ) |
| | ) |

18929924v.2

| | |
|---|---|
| v. | ) |
| | ) |
| Citadel Energy Partners, LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**LIMITED OBJECTION OF ADVERSARY DEFENDANT, LOUIS BRIDGES, TO
MOTION OF GAVIN/SOLMONESE LLC, LIQUIDATION TRUSTEE FOR THE
CITADEL CREDITORS' GRANTOR TRUST, SUCCESSOR TO CITADEL WATFORD
DISPOSAL PARTNERS, L.P., ET. AL., FOR AN ORDER AMENDING CAPTIONS TO
<u>REFLECT REAL PARTY IN INTEREST</u>**

Louis Bridges, one of the Defendants in Adversary Proceeding No. 17-50024 (the

**"Adversary Proceeding"**), through his undersigned counsel, submits this Limited Objection to

the Motion of Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Creditors' Grantor

Trust, Successor to Citadel Watford Disposal Partners, L.P., et. al., For an Order Amending

Captions to Reflect Real Party In Interest [Doc. #545] (the **"Motion to Amend"**), and in support

thereof, avers as follows:

<u>**INTRODUCTION**</u>

The Official Committee of Unsecured Creditors of Citadel Watford Disposal Partners,

L.P. (the **"Committee"**) filed the Adversary Proceeding between the date on which this Court

conditionally approved the Debtors' Disclosure Statement and the date set for the Confirmation

Hearing on the Debtors' Plan.  The Adversary Proceeding was filed pursuant to an Order

granting the Committee limited standing to pursue avoidance actions under Chapter 5 of the

Bankruptcy Code.  Mr. Bridges filed a Motion to Dismiss the Adversary Proceeding citing the

limited nature of standing granted the Committee in the Standing Order and the facts of record in

these jointly administered cases which conclusively establish a complete defense to the only avoidance action asserted against Mr. Bridges.  After confirmation of the Debtors' plan, the Liquidation Trust moved to amend the caption and substitute the Liquidation Trust for the Committee as Plaintiff.  Other than improper tactical reasons such as forum shopping or the avoidance of possible sanctions, there is no reason that the commencement of the Adversary Proceeding could not have been deferred until after the effective date of the Plan when the Liquidation Trust would have had standing to assert all causes of action asserted in the complaint.  Because Mr. Bridges' rights and defenses in the Adversary Proceeding could be prejudiced if the Motion to Amend is granted, the Motion to Amend should be denied or, in the alternative, any Order granting the relief in the Motion should condition such relief on the right of Mr. Bridges to assert against the Liquidation Trust any claims or defenses which he would have been able to assert against the Committee in the Adversary Proceeding.

## BACKGROUND

1.      On June 19, 2015 (the **"Petition Date"**), the Debtors each commenced Chapter 11 bankruptcy cases (the **"Cases"**) by filing Voluntary Petitions for Relief under 11 U.S.C. §101, et. al. (the **"Bankruptcy Code"**).

2.      On July 20, 2015, the United States Trustee in the jointly-administered Cases appointed the Committee.

3.      On May 5, 2016, the Debtors and the Committee filed the Joint Motion for Entry of an Order: (A) Granting the Official Committee of Unsecured Creditors Standing to Pursue Causes of Action Belonging to the Debtors' Estates and Arising Under Chapter 5 of the Bankruptcy Code; and (B) Approving Procedures and Authority Governing Settlement of Chapter 5 Causes of Action [Doc. No. 320] (the **"Standing Motion"**) in which the Committee

sought standing to "assert causes of action against multiple defendants in appropriate adversary proceedings under §§547, 548 and 550 of the Bankruptcy Code."

4.      On June 21, 2016, this Court entered an Order [Doc. No. 351] (the **"Standing Order"**) granting the Standing Motion and authorizing the Committee to pursue the Chapter 5 avoidance actions described in the Standing Motion.

5.      On December 12, 2016, the Committee commenced twelve (12) adversary proceedings seeking to recover potentially avoidable pre-petition transfers of assets from various parties pursuant to Chapter 5 of the Bankruptcy Code.

6.      On December 16, 2016, the Debtors and the Committee filed the Amended Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors (Doc. No. 473) (the **"Plan"**).  The Plan provided for the creation of the Liquidation Trust and the transfer of all of the Debtors' causes of action to the Liquidation Trust.  See Plan at Article IX.D.

7.      On December 16, 2016, this Court entered the Order (I) conditionally approving the Disclosure Statement; (II) Scheduling a Planned Confirmation Hearing; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballots; and (V) Granting Related Relief [Doc. N. 475] (the **"Scheduling Order"**).  In the Scheduling Order, this Court scheduled a hearing to consider confirmation of the Plan for February 23, 2017.

8.      On February 6, 2017, seventeen (17) days prior to the Scheduled Confirmation Hearing, the Committee commenced the Adversary Proceeding against Louis Bridges and others.

9.      The Complaint in the Adversary Proceeding (the **"Adversary Complaint"**) asserts 14 counts.  The claims against the individuals who allegedly controlled the Debtors are

styled as claims for breach of fiduciary duty; gross mismanagement; breach of duty of loyalty; waste; fraud; fraudulent concealment; fraudulent transfers under 11 U.S.C. §548; conversion; unjust enrichment; and negligence.  The Complaint also asserts claims styled as professional negligence against Bridges (as an attorney) and Jonathan P. Rubin, CPA (as an accountant).  A separate count is asserted against Bridges styled as breach of fiduciary duty.  Another claim seeks an accounting and a declaratory judgment determining the extent of the partnership interests held by various parties in the Debtors and the extent of the Debtors' ownership interest in a certain lease covering property in North Dakota known as the "Dahl Lease."  Finally, the Complaint seeks an accounting of the Debtors' assets and liabilities.  A true and correct copy of the Adversary Complaint is attached hereto as Exhibit "A".

10.     On February 23, 2017, this Court confirmed the Plan by entering the Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. §1129(b) and Fed.R.Bankr.P. 3020 (I) Confirming Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, (II) Approving Disclosure Statement, and (III) Approving Solicitation Procedures [Doc. No. 517] (the **"Confirmation Order"**).

11.     Pursuant to the Plan, all Debtors' right, title and interest in the Causes of Action (as defined in the Plan) including the Adversary Proceeding, were transferred to the Liquidation Trust.  See Exhibit C to Plan.

12.     Article XII of the Plan includes an exculpation provision releasing, among others, the Committee, and its members from any claims or causes of actions relating to these Cases that arose between the Petition Date and the Effective Date of the Plan.  See Plan at Article XII.A.

18929924v.2

13.    On April 18, 2017, Mr. Bridges filed a Motion to Dismiss the Adversary Proceeding (the **"Motion to Dismiss"**) in which he asserts that the Committee lacks standing to pursue 13 of the 14 Counts asserted in the Adversary Proceeding, and that the sole Count for which the Committee possesses standing fails to assert a cause of action against him.  See Motion of Louis Bridges to Dismiss Complaint, Doc. No.42 at Case No. 17-50024 a true and correct copy (without exhibits) of which is attached hereto as Exhibit "B".

14.    Eleven of the 14 causes of action asserted in the Adversary Proceeding were asserted by a group of claimants acting on behalf of the Debtors (the **"Investors"**) in pre-petition litigation (the **"California Action"**) brought against Mr. Bridges and the other defendants named in the Adversary Proceeding.  See copy of complaint in the California Action attached hereto as Exhibit "C".[1]  The additional claims of "gross mismanagement", "breach of duty of loyalty" and "fraudulent transfers" contained in the Adversary Complaint are based upon the same factual allegations and could have been asserted under non-bankruptcy law in the California Action.

## OBJECTION

15.    In the absence of some exigency such as the looming expiration of a filing deadline or statute of limitations, there appears to be no valid basis for the Committee's commencement of an adversary proceeding asserting claims for which they did not possess standing a mere seventeen (17) days before confirmation of a Plan which provided for the transfer to the Liquidation Trust of all claims held by the Debtors' estates.

---

[1] The California action resulted in a stipulated judgment against Defendant, Stanton Dodson, and settlements between the Investors and the remaining served Defendants.  Mr. Bridges was never served in the California Action and the Investors agreed to dismiss him without prejudice.  *See* Brief in Support of Mr. Bridges' Motion to Dismiss at p. 2 and Exhibit "C" of Appendix to Motion to Dismiss.

16.     Based upon the timing of the commencement of the Adversary Proceeding, it appears to be an attempt by the Committee (a) to forum shop by attempting to create jurisdiction in this Court over state law causes of action which have no bearing on the administration of the Debtor's estate,  or (b) to insulate itself (and potentially the Liquidation Trust) from potential sanctions for failing to properly investigate the causes of action asserted against the Defendants in the Adversary Proceeding.

17.     Bankruptcy Rules 7015 and 7017 were not intended to allow plaintiffs to implement this type of tactical maneuver and prejudice the rights of defendants like Mr. Bridges and the other defendants in the Adversary Proceeding.

18.     While Rule 17 of the Federal Rules of Civil Procedure authorize the liberal exercise of a Court's authority to substitute a real party in interest, in certain circumstances, courts have refused to allow substitution when the failure to bring the action in the name of a correct party was not the result of an honest or understandable mistake.  The rationale for this approach is that it would be unreasonable to allow an action to be filed by a party who knows that he or she is not the real party in interest just to toll the statute of limitations.

19.     In his Motion to Dismiss, Mr. Bridges has asserted that the Committee lacked standing to bring the Adversary Proceeding.  The United States Supreme Court has stated "the existence of federal jurisdiction ordinarily depends on the facts as they exist when the Complaint is filed."  *Newman-Green, Inc. v. Alfonso-Lorrain*, 490 U.S. 826, 830, 104 L.Ed. 2d 893, 109 S. Ct. 2218 (1989).  The addition or substitution of a party after a suit is filed cannot create standing where none existed at the time the suit was filed.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4, 119 L.Ed. 2d 351, 112 S.Ct. 2130 (1992).

20.     When determining the identity of the correct party to bring an action is not difficult and when no excusable mistake has been made, courts often rule that substitution will not be allowed and that the suit should be dismissed.  *See*, *Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273, 275-276 (E.D. Pa. 1999) aff'd.,  216 F. 3d 1075 (3d Cir. 2000), cert. den'd., 532 U.S. 920, 121 S. Ct. 1357, 149 L. Ed. 2d 27 (2001) (Court dismissed case when plaintiff failed to sustain burden of showing that he made "honest and understandable mistake" in brining suit in his own name when bankruptcy trustee was real party in interest);  *Gardner v. State Farm Fire and Casualty Company*, 544 F.3d 533, 562-563 (3d Cir. 2008) (the "salutary principle" that actions should not be forfeited through honest mistake does not apply to situations in which a party with no cause of action files a lawsuit to toll statute of limitations and later obtains cause of action through assignment);  *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 n. 8 (3d Cir. 1995) (Rule 17 was intended to prevent forfeiture based on expiration of statute of limitations when determination of proper party to sue is difficult or when understandable mistake has been made); *Advanced Magnetics Inc. v. Bayfront Partners Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (District Court may dismiss an action when there was no reasonable basis for naming the incorrect party);  *Park B. Smith Inc. v. CHF Industries,* 811 F. Supp. 2d 766 (S.D. N.Y. 2011) (Courts should grant leave to substitute real party in interest if (1) defect in named plaintiff plausibly resulted from mistake and (2) correcting this defect would not unfairly prejudice defendants by changing particulars of claims against them);  *Metal Forming Technologies Inc. v. Marsh & McClennan Company*, 224 F.R.D. 431 (S.D. Ind. 2004) (Court denied substitution and dismissed action where failure to bring action in name of real party in interest was for tactical reasons and not the result of honest or understandable mistake).

21.     As set forth more fully in Mr. Bridges' Motion to Dismiss the Adversary Proceeding, it is abundantly clear from the terms of the Standing Order that the Committee lacked standing to bring 13 of the 14 counts contained in the Adversary Complaint.  The Adversary Complaint was prepared and filed by the same experienced bankruptcy counsel who co-signed the Standing Motion seeking authority for the Committee to bring Chapter 5 avoidance actions.  Accordingly, the Committee and its counsel were fully aware of the limitations of the Committee's standing to pursue the defendants named in the Adversary Proceeding.  Under the circumstances, the failure to file the Adversary Proceeding in the name of the correct party cannot be described as simply an "honest and understandable mistake."

22.     Mr. Bridges and the other defendants in the Adversary Proceeding will be unduly prejudiced if this Court allows the substitution of the Trustee for the Committee and that substitution is deemed retroactive to the date on which the Adversary Complaint was filed.

23.     In *In re Seven Fields Settlement Corp.*, 505 F.3d 237 (3d Cir. 2007), the Third Circuit Court of Appeals discussed the relationship between the filing date of an adversary proceeding and the correct test for determining if the Bankruptcy Court lacked jurisdiction to hear the claim.  Under the test announced in the *Seven Fields* case, when the Complaint in an adversary proceeding is filed prior to confirmation of the debtor's plan, the Bankruptcy Court must use the "effect on the bankruptcy estate" test established in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).  When the Complaint in the adversary proceeding is filed after confirmation of the debtor's plan, the Bankruptcy Court is required to use the more stringent "close nexus" test applied by the court in *Binder v. PriceWaterhouse & Co. LLP (In re Resorts International Inc.)* 372 F.3d 154 (3d Cir. 2004).  In his Motion to Dismiss, Mr. Bridges reserved his right to challenge this Court's jurisdiction to hear the Adversary Proceeding.  If this Court applies the

-9-

*Pacor* test in its analysis of the jurisdictional questions raised by Mr. Bridges, it is more likely that this Court will determine that it possesses jurisdiction forcing Mr. Bridges and others to litigate claims arising under state law in a federal court with little or no contact with the controversy.  If, however, this Court utilizes the more stringent *Resorts'* test in determining whether it possesses jurisdiction over the Adversary Proceeding, it is highly likely that this Court will determine that it lacks jurisdiction resulting in the dismissal of the action or the transfer of the action in a more appropriate forum.

24.     In addition, a comparison of the Adversary Complaint with the complaint filed in the California Action, directly raises the question of whether the Committee simply copied the factual allegations set forth in the Complaint in the California Action and failed to conduct the required independent investigation into the veracity of those allegations, resulting in a complaint which includes glaring factual inaccuracies.

25.     As set forth in Mr. Bridges' Motion to Dismiss, the fraudulent transfer claim asserted against Mr. Bridges is based primarily upon his involvement in the alleged pre-petition transfer of the "Dahl Lease" to a non-debtor.  According to the schedules filed by Debtor, Pembroke Fields, LLC, however, the Dahl Lease was still held by Pembroke Fields when it filed its Chapter 11 Petition.  In addition, the Dahl Lease was later assumed and assigned by the Debtors in connection with a sale of substantially all of the Debtors' assets in these Cases.  *See* Order (1) Authorizing and Approving the Sale of Substantially All of the Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code §§105 and 363(b), (f) and (m); (2) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (3) Granting Related Relief approving Asset Purchase Agreement (the "Sale Order") attached hereto as Exhibit "D".

26.     Because anyone who has participated in these Cases since the beginning, would be aware that Mr. Bridges' actions did not result in the assignment of the Dahl Lease prior to the Debtors' bankruptcy filings, the inclusion in the Adversary Complaint of the allegation about assignment of the Dahl Lease appears to be is frivolous.  In the event discovery reveals that the Committee adopted the unsubstantiated allegations of the Investors without conducting its own investigation into the validity of those allegations, the Committee's actions in filing the Adversary Complaint could be sanctionable under Bankruptcy Rule 9011.

27.     As set forth above, on February 23, 2017, this Court confirmed the Debtor's Plan pursuant to which the Committee was dissolved.  Article XII of the Plan contains provisions which release the Committee and its members from any claims or causes of action arising out of any act or omission by the Committee or its members related to the Cases through the effective date of the Plan.  Had the Trustee waited until the Effective Date to commence the Adversary Proceeding, nothing in the Plan could prevent Mr. Bridges or any other defendants in the Adversary Proceeding from seeking sanctions under Bankruptcy Rule 9011 or otherwise against the Trustee and/or its counsel.  Accordingly, the Trustee and its counsel should not be able to use Bankruptcy Rule 7017, the exculpatory provisions of the Plan and the fact that the Adversary Proceeding was commenced by the Committee to shield itself from liability for any conduct otherwise found to be sanctionable by this Court or another court with proper jurisdiction.

28.     Because there appears to be no valid reason, other than tactical, for the Committee to have filed the Adversary Complaint when it did, the Liquidation Trust should not be permitted to use the pending Motion to Amend to prejudice the rights of Mr. Bridges or any other defendant in the Adversary Proceeding or preclude any subsequent motion to withdraw

18929924v.2

the reference, request abstention or seek appropriate sanctions under Rule 9011 or similar provision.

## CONCLUSION

29.     For the foregoing reasons, Defendant, Louis Bridges, respectfully requests that the Motion to Amend be denied or, in the alternative, that any Order granting the Motion be conditioned upon:  (a) a finding that, with respect to any challenge to this Court's jurisdiction to hear the Adversary Proceeding, that the commencement date of the Adversary Proceeding shall be deemed to be the date on which an Order allowing amendment is entered;  and (b) a finding that the Trustee shall be deemed to be the signer of the Adversary Complaint for purposes of Rule 9011 and that the Trustee cannot use the release and exculpatory provisions contained in the Plan to shield itself from any sanctions that a Court may deem appropriate as a result of the filing of the Adversary Complaint.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

John D. Balaguer (DE No. 2537)
Nicholas R. Wynn ((DE No. 5670)
600 N. King Street, Suite 800
Wilmington, DE 19801-3722
Telephone:  (302) 467-4501
Facsimile: (302) 467-4551
Email:  balaguerj@whiteandwilliams.com

and

Joseph G. Gibbons
1650 Market Street, 18th Floor
Philadelphia, PA  19103
Telephone: (215) 864-7074

18929924v.2

Facsimile: (215) 864-7123
Email: gibbonsj@whiteandwilliams.com

*Counsel for Defendant, Louis Bridges*

May 9, 2017

18929924v.2